IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACKIE McGEE,

                Plaintiff,

v.                                                                    OPINION and ORDER

JILL WENZEL and TONYA WESNER,                                         23-cv-689-jdp

                Defendants.

---

Plaintiff Jackie McGee, a prisoner at Waupun Correctional Institution, suffers from arthritis, and for several years prison medical staff treated McGee's arthritis pain with hydrocodone. But when McGee was transferred to Waupun in 2023, defendant Tonya Wesner (an advanced practice nurse prescriber at the prison) discontinued the prescription. Proceeding without counsel, McGee contends that Wesner should have tapered his dose before stopping the hydrocodone prescription altogether and that defendant Jill Wenzel (the health services manager) disregarded his complaints about pain. He asserts claims under the Eighth Amendment to the United States Constitution and Wisconsin's common law of negligence.

Both sides move for summary judgment. McGee also moves for assistance in recruiting counsel. For the reasons below, I will grant defendants' motion for summary judgment and deny both of McGee's motions. I will decline to exercise supplemental jurisdiction over McGee's state-law claims and dismiss those claims without prejudice to McGee refiling them in state court.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

McGee has been in the custody of the Wisconsin Department of Corrections (DOC) during the time relevant to this case. He is 63 or 64 years old.

McGee suffers from arthritis in his neck, shoulders, hands, lower back, hips, knees, and feet. From 2016 to 2023, prison medical providers prescribed McGee hydrocodone and acetaminophen for his arthritis pain. Hydrocodone is an opioid pain reliever.

Despite the hydrocodone prescription, McGee continued to complain about arthritis pain. For example, in January 2023 and twice in April 2023, McGee submitted health service requests about "severe pain" from his arthritis. Dkt. 65-1, at 68–70. In one of his April requests, he also complained about headaches, night sweats, and vomiting.

On July 16, 2023, McGee was transferred from Oshkosh Correctional Institution to Waupun Correctional Institution. Wesner, an advanced practice nurse prescriber at Waupun, reviewed McGee's medications and determined that hydrocodone was not appropriate for McGee, relying on the following information:

- McGee was diagnosed with mild arthritis;
- imaging and x-rays from 2020 showed mild degenerative changes in in McGee's knees, pelvis, and spine;
- results from imaging in 2021 of McGee's left hip were normal;
- results from imaging in 2022 of McGee's right hip were normal; and
- a January 2023 orthopedic evaluation stated that McGee has "healthy joints" and "does not have any significant osteoarthritis," the "only reasonable recommendation is for conservative treatment," and that the orthopedist "would not criticize HSU giving this individual Tylenol on an as needed basis for these pain complaints";

2

- narcotics such as hydrocodone are generally appropriate only for short-term pain.

Wesner discontinued McGee's hydrocodone prescription and instead prescribed extra strength Tylenol for 90 days. She maintained an existing prescription for lidocaine topical cream. She did not taper the hydrocodone dose before discontinuing it because McGee was prescribed 5mg, the lowest dose that one could receive.

The health services unit received requests from McGee on July 20 and July 24. (Defendants did not submit copies of those requests, and the copies McGee submitted are partly unreadable because the quality of the copy is poor. Dkt. 69-4, at 1,7.) A nurse examined McGee on July 24. He complained about pain, headaches, night sweats, nausea, diarrhea, and vomiting three or four times a day. Dkt. 65-1, at 13–14. The nurse's notes stated that she "will refer to ACP," or advanced care provider, which was Wesner.

On July 25, Wesner reviewed McGee's medical records and wrote the following note:

> Nursing sick call with discussion of chronic pain. PIOC recent transfer, had been on Vicodin previously and was discontinued upon transfer to WCI.[1] There is a current POC in place acetaminophen and lidocaine topical. The PIOC reports to nursing he is not using these medications and does not elaborate on why. This is the current POC and this needs to be adhered to. Also noted with nursing report, c/o N/V/D. Is currently in isolated single cell in RHU-refused COVID testing offered. Is afebrile. No f/u indicated.

Dkt. 65-1. Wesner says that that "there was no reason to think [McGee's] symptoms were related to McGee no longer taking hydrocodone" because McGee suffered from gastritis, which can cause nausea, vomiting, and diarrhea. Dkt. 82, ¶ 44.

---

[1] The reference to Vicodin appears to be a mistake. Neither side says that McGee was ever prescribed Vicodin.

3

On August 9, McGee was scheduled for an in-person visit with Wesner. But the appointment was canceled because McGee had to attend a court proceeding. Wesner wrote, "Will need to be rescheduled later time." Dkt. 65-1, at 26.

On August 12, McGee submitted another health service request, complaining about arthritis pain. The nurse checked a box that McGee was "scheduled to be seen in HSU" by the advanced care provider, *id.* at 69, but defendants do not say that an appointment was scheduled.

On September 18, McGee submitted a health service request, alleging that he was in severe pain from his arthritis, and his prescribed medication was not working. The nurse again checked a box that McGee was scheduled to be seen by the advanced care provider, but, again, defendants do not say that an appointment was scheduled.

On October 25, McGee submitted a health service request, alleging that he was in severe pain from his arthritis, and his prescribed medication was not working. On October 31, McGee had an appointment with Wesner. McGee stated that he was in pain and wanted Wesner to prescribe hydrocodone. Wesner told McGee that hydrocodone is not appropriate for arthritis, but she would prescribe indomethacin and reevaluate after receiving lab results.

McGee submitted three health service requests in November 2023. On November 5, he alleged that indomethacin was causing chest pains and shortness of breath. On November 7 and 12, McGee alleged that he continued to experience severe joint pain.

On November 13, a nurse examined McGee. She told McGee that Wesner had addressed his pain complaints during his October appointment, but she would update Wesner on McGee's complaints of side effects from indomethacin. The same day, Wesner examined

4

McGee for an unrelated issue. McGee did not complain to Wesner about his arthritis pain or side effects from indomethacin.

On April 11, 2024, McGee submitted a health service request, complaining that his medication was not working for his joint pain. On April 15, a nurse examined McGee. She referred McGee to "Dr. English" (a Waupun physician) for chronic pain management. On May 1, English examined McGee, and she discussed multiple treatment options with him, but he was not interested in any treatment other than hydrocodone.

ANALYSIS

A.  Overview of claims and legal standards

It is important at the outset to clarify the scope of this case. McGee is proceeding on two claims under the Eighth Amendment and Wisconsin's common law of negligence:

(1) Wesner failed to taper McGee's hydrocodone prescription before discontinuing it; and

(2) Wenzel denied McGee medical attention for his arthritis pain after his hydrocodone prescription was discontinued.

McGee had previously asserted claims that Wesner violated his rights by substituting other medications for hydrocodone and by removing accommodations he received for his arthritis. I dismissed the first claim at the screening stage because prisoners are not entitled to the pain medication of their choice, *see Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019); *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019), and there are valid reasons for not prescribing an opioid for chronic pain. Dkt. 19, at 3; Dkt. 28, at 4–5. I dismissed the claim about accommodations because McGee did not exhaust his administrative remedies for that claim. Dkt. 55.

Both sides' summary judgment materials raise issues that fall outside the scope of the two remaining claims. For example, defendants devote much of their briefs and proposed findings of fact to the issue whether Wesner acted reasonably by changing McGee's pain medication. I have already dismissed that claim, so it is not necessary to consider it in this opinion. Defendants also include proposed findings of fact about broader issues concerning McGee's course of treatment, such as the reasonableness of Wesner's and other health care providers' conduct after Wesner discontinued the hydrocodone prescription. Those issues are outside the scope of the complaint.

For his part, McGee says that Wesner prescribed medications that she knew would exacerbate his gastritis, and he blames both defendants for failing to discontinue his indomethacin prescription for seven months despite adverse side effects. Dkt. 77, at 3–5, 10; Dkt. 81, ¶ 12; Dkt. 82, ¶ 4. McGee also discusses a cyst on his buttock, Dkt. 77, at 5, and complains about the current treatment he is receiving for his arthritis, Dkt. 84, at 7–8. McGee did not raise any of these issues in his pleadings. It is rarely appropriate for a plaintiff to amend his complaint through his summary judgment submissions, *see Schmees v. HC1.COM, Inc.*, 77 F.4th 483 (7th Cir. 2023), and McGee does not identify any reason why this case is the rare exception. So I have limited my consideration to the claim against Wesner for failing to taper and the claim against Wenzel for disregarding McGee's health service requests.

Both of McGee's claims are governed by the Eighth Amendment to the U.S. Constitution and Wisconsin's common law of negligence. Jurisdiction over the state-law claims rest on the federal claims, *see* 28 U.S.C. § 1367, so I will consider McGee's Eighth Amendment claims first.

6

The Eighth Amendment prohibits cruel and unusual punishment. In the medical context, the Supreme Court has interpreted that to mean that prison staff may not be "deliberately indifferent" to a prisoner's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). "Deliberate indifference" means that the defendant is aware of an excessive risk to the prisoner's health or safety, but the defendant is disregarding the risk by consciously failing to take steps to help the prisoner. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). In the medical context, the plaintiff may prove this element with evidence that the defendant's conduct was "blatantly inappropriate," *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), or "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). In other words, "[a] constitutional violation exists only if no minimally competent professional would have so responded under those circumstances." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (internal quotations omitted)).

Stated in simpler terms, a plaintiff asserting a medical-care claim under the Eighth Amendment must prove four things: 1) the prisoner needed medical treatment; 2) the defendant knew that the prisoner needed medical treatment; 3) the defendant consciously refused to take reasonable steps to provide the needed treatment; and 4) the defendant's action or inaction harmed the plaintiff. Federal Civil Jury Instructions of the Seventh Circuit § 7.17 (2017); *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023).

7

Both sides move for summary judgment on all of McGee's claims. The question on summary judgment is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). When reviewing cross-motions for summary judgment, the court construes all inferences in favor of the party against whom the motion under consideration is made. *Med. Protective Co. of Fort Wayne, Indiana v. Am. Int'l Specialty Lines Ins. Co.,* 911 F.3d 438, 445 (7th Cir. 2018).

B.  **Wesner: failure to taper**

McGee contends that Wesner should have weened him off hydrocodone before discontinuing the prescription. As a result of failing to taper the dose, McGee says that he suffered from withdrawal symptoms in the form of pain, headaches, night sweats, nausea, diarrhea, and vomiting for approximately three weeks.

Wesner seeks summary judgment on this claim on two grounds. First, she says that her decision not to taper was reasonable because McGee was already on the lowest dose of hydrocodone, so there was nothing to taper. And the symptoms McGee reported were similar to the symptoms for gastritis, which McGee suffered from, so she did not interpret the symptoms as signs of withdrawal. Second, Wesner says that McGee is not qualified to testify about what caused his symptoms, and he has no other evidence of causation.

8

### 1. Conscious failure to provide reasonable treatment

On the first issue, Wesner has provided medical reasons for declining to taper McGee's dose and for concluding that McGee's symptoms were not evidence of withdrawal. I will grant Wesner's motion for summary judgment because McGee has not presented evidence from which a reasonable jury could find that Wesner's decision not to taper was "blatantly inappropriate," *Snipes*, 95 F.3d at 592, or was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396.

McGee cites what appears to be a DOC pamphlet about hydrocodone stating that "the dose will be slowly lowered over time to avoid any side effects" if "your doctor wants you to stop taking the medicine." Dkt. 79, at 3. He also cites *Sheppard v. Waterman*, No. 18-cv-896-wmc, 2021 WL 664930, at *10–11 (W.D. Wis. Feb. 19, 2021), in which the court concluded that failing to taper a prisoner's dose of pregabalin before discontinuing it could violate the Eighth Amendment.

These authorities do not require a decision in McGee's favor. I will assume that tapering is generally recommended before discontinuing an opioid like hydrocodone, but that assumption is not enough to carry the day for McGee. The pamphlet does not identify the proper course of action when the patient is already on the lowest dose of a drug. Perhaps it is possible or even optimal to give a patient fractions of a dose in that situation or to decrease the frequency of the dose. But even if I assume that it would have been reasonable for Wesner to investigate potential options for tapering, that is not evidence that any minimally competent professional would have done that. *Johnson,* 5 F.4th at 825. Even if Wesner's decision was

negligent, it is well established that the Eighth Amendment requires a stronger showing than a claim of medical malpractice. *Id*.

McGee's reliance on *Sheppard* faces the same problem. There is no indication that the prisoner in *Sheppard* was on the lowest dose of the medication. In addition, the doctor in that case did not give the prisoner a substitute to treat his pain. 2021 WL 664930, at *10–11. In this case, Wesner prescribed extra strength Tylenol and lidocaine topical cream, which was consistent with the recommendation of McGee's orthopedist. McGee says that Tylenol is an NSAID, which can exacerbate his gastritis, but that is incorrect. Tylenol (acetaminophen) is not an NSAID and is generally safer on the stomach.[2]

Even if I assume that Wesner's conduct violated the Eighth Amendment, that would not be enough to overcome Wesner's qualified immunity defense, which requires McGee to show that Wesner violated clearly established case law. *Carroll v. Carman*, 574 U.S. 13, 16–17 (2014). McGee has not cited any Supreme Court or Seventh Circuit cases that would have put Wesner on notice that she must taper a medication that is already on the lowest dose, and I am not aware of any such authority. *Sheppard* does not help McGee, both because that case is distinguishable for the reasons discussed, and because district court cases cannot overcome a qualified immunity defense. *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020).

---

[2] Cleveland Clinic, "NSAIDs (Nonsteroidal Anti-Inflammatory Drugs)," https://my.cleveland clinic.org/health/treatments/11086-non-steroidal-anti-inflammatory-medicines-nsaids ("[A]cetaminophen isn't an NSAID [and it] doesn't cause as many gastrointestinal issues as NSAIDs. . . . So, if you're prone to stomach issues, acetaminophen might be a better option for you.").

### 2. Causation

McGee also has a causation problem. Generally, a lay person may not testify about the causes of his symptoms. *See Lloyd v. Moats*, 721 F. App'x 490, 494–95 (7th Cir. 2017); *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001). There is an exception if causation is within a lay person's "common experiences or observations." *Hendrickson v. Cooper*, 589 F.3d 887, 891–92 (7th Cir. 2009). For example, I have allowed plaintiffs to testify about potential causes of injuries when they appear immediately after the event at issue, and there is no other reasonable explanation for the injuries. *See, e.g.*, *Jordan v. Smith*, No. 23-cv-61-jdp, 2025 WL 1411121, at *5 (W.D. Wis. Apr. 4, 2025). But in this case, McGee complained about virtually identical symptoms both before and after Wesner discontinued his hydrocodone prescription in mid-July 2023. *Compare* Dkt. 65-1, at 69 (April 2023 health service request complaining about "headaches, night sweats, vomiting") *with* Dkt. 65-1, at 13–14 (late-July 2023 progress note identifying complaints about headaches, night sweats, nausea, diarrhea, and vomiting). This supports Wesner's view that McGee's symptoms were caused by another problem, such as gastritis.

There may be room to question whether Wesner could have done more to prevent potential withdrawal symptoms. But even if there were ways that Wesner could have tapered McGee's hydrocodone dose, neither the facts nor the law support a conclusion that Wesner violated the Eighth Amendment. I will grant defendants' motion for summary judgment on this claim.

### C. Wenzel: disregarding complaints

McGee contends that Wenzel disregarded health service requests in which McGee complained about arthritis pain. This claim fails for a straightforward reason: McGee has not

11

submitted any evidence that Wenzel was involved with his health care or was even aware of his concerns. Wenzel did not sign any of the health service requests that McGee submitted between July 2023 and April 2024, which is the relevant time for this claim. And neither side has submitted any other evidence suggesting that Wenzel reviewed McGee's requests or otherwise learned about them. It is well established that a person may not be held liable under the Eighth Amendment unless she knows that the plaintiff's health or safety is threatened. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). It is not enough that Wenzel may have supervised nurses who knew about McGee's health problems. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).

Even if McGee had named a different defendant, he could not show an Eighth Amendment violation based on health services staff denying him care. After McGee submitted health service requests about pain and potential withdrawal symptoms in late July 2023, a nurse promptly examined McGee and then referred him to Wesner. McGee was scheduled to see Wesner on August 9, but that appointment had to be cancelled because McGee had to attend a court proceeding. McGee does not cite any evidence that health services staff could have anticipated that.

It is true that health services staff did not schedule an appointment in response to two health service requests that McGee filed in August and September 2023, despite writing on the request form that an appointment would be scheduled. But McGee's only complaint in these requests was that his arthritis medication was not effective. Wesner had just adjusted McGee's medication in late July, so it is unlikely that she would have made additional adjustments so soon. When McGee complained again in October 2023, he received a prompt appointment with Wesner, and she adjusted his medication then. After October 2023, McGee was promptly

12

seen by a health care provider when he submitted health service requests. In any event, neither side has put in evidence about the reason for the failure to schedule the October appointment sooner, so the most that can be reasonably inferred is that staff were negligent, and that is not enough to support an Eighth Amendment violation. *Johnson*, 5 F.4th at 825.

McGee raises a new issue in his summary judgment submissions, contending that Wenzel should have challenged Wesner's decision to discontinue his hydrocodone prescription. *See, e.g.*, Dkt. 82, ¶ 8. But this contention fails, both because I did not allow McGee to proceed on such a claim and because I have already concluded that Wesner did not violate McGee's rights by discontinuing his prescription. If Wesner's decision was lawful, then Wenzel had no duty to challenge that decision.

I will grant defendants' summary judgment motion as it relates to McGee's Eighth Amendment claim against Wenzel.

**D. State-law claims**

McGee is also asserting negligence claims against both defendants. The court is exercising supplemental jurisdiction over those claims based on 28 U.S.C. § 1367. "Absent unusual circumstances, district courts relinquish supplemental jurisdiction over pendent state law claims if all claims within the court's original jurisdiction have been resolved before trial." *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). The court is dismissing all of McGee's federal claims in this case, and no party identifies any unusual circumstances that would support a decision to retain jurisdiction over the state-law claims. So I will dismiss the state-law claims without prejudice. McGee is free to pursue those claims in state court if he wishes.

### E. Assistance in recruiting counsel

McGee also asks for appointment of counsel. McGee did not file this motion until after both sides moved for summary judgment, and the arguments in his motion focus on trial issues, so this motion may be moot in light of my decision to grant summary judgment to defendants. But even if I construe the motion as a request to recruit counsel for the purpose of litigating the motions for summary judgment, I would deny the motion.

There is no right to counsel in civil cases, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), so a party who wants assistance from the court in recruiting counsel must meet three requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). First, he must show that he is unable to afford counsel. *See* 28 U.S.C. § 1915(e).

Second, he must show that he made reasonable efforts on his own to find a lawyer to represent him. *Balle v. Kennedy*, 73 F.4th 545, 559–60 (7th Cir. 2023). In this court, a party may satisfy that requirement with evidence that at least three lawyers in the relevant practice area refused the party's request to represent him. That evidence may include rejection letters from the lawyers or a declaration or affidavit from the plaintiff in which he identifies the lawyers he asked, the date he made his request, and the way in which each lawyer responded.

Third, the plaintiff must demonstrate that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The question is not simply whether a lawyer might do a better job. "The inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.* at 655.

The court may also consider the likelihood that the plaintiff would succeed on his claims if counsel were recruited. *Watts v. Kidman*, 42 F.4th 755, 763–64 (7th Cir. 2022). This is because almost all pro se litigants would benefit from the assistance of counsel, but there are not enough lawyers willing to take each case. So I must decide "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring).

McGee is proceeding *in forma pauperis*, so he meets the requirement to show that he cannot afford to pay counsel on his own. But he has not satisfied any of the other requirements. As for the requirement to make reasonable efforts to find his own lawyer, McGee does not say that he contacted any lawyers to represent him, so that alone is reason to deny his motion.

As for whether McGee is able to litigate this case on his own, McGee's filings to date show that he is a competent litigator. I allowed him to proceed on most of his claims, and he defeated part of defendants' summary judgment motion on exhaustion issues. He has conducted discovery, filed his own motions, prepared declarations, and written briefs making clear arguments and citing relevant case law. His abilities are consistent with prisoners in other cases in which courts have concluded that assistance of counsel was not required. *See, e.g.*, *Riley v. Waterman*, 126 F.4th 1287, 1299 (7th Cir. 2025) (affirming decision to deny recruitment of counsel, noting that the plaintiff "had no difficulty communicating with the court in writing," filed a "clear and straightforward" amended complaint that adequately explained the facts, responded to the defendants' arguments, cited source documents, and filed hundreds of pages of documents with the court).

McGee's primary argument in his motion is that he needs a lawyer so that the lawyer can hire a medical expert for him. But it is unlikely that an expert would have made a difference in this case. As already discussed, McGee provided a reasonable medical justification for declining to taper McGee's dose. Even if McGee were able to find a medical expert to offer an opinion that Wesner should have found a way to taper the hydrocodone before discontinuing it, a difference of opinion is not enough to prove an Eighth Amendment violation. *Norfleet*, 439 F.3d at 396.

"[C]ourts must be careful stewards of the limited resource of volunteer lawyers." *Watts*, 42 F.4th at 763–64. This is not one of the cases in which recruitment of counsel would be an appropriate use of those limited resources.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Tanya Wesner and Jill Wenzel, Dkt. 62, is GRANTED as to plaintiff Jackie McGee's claims under the Eighth Amendment.

2. I decline to exercise supplemental jurisdiction over McGee's state-law claims, and those claims are DISMISSED without prejudice to McGee refiling them in state court.

3. Plaintiff Jackie McGee's motion for summary judgment, Dkt. 68, is DENIED.

4. McGee's motion for assistance in recruiting counsel, Dkt. 71, is DENIED.

5. The clerk of court is directed to enter judgment and close this case.

Entered July 8, 2025.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge